

**KAUFMAN DOLOWICH VOLUCK**
ATTORNEYS AT LAW

Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

*Keith Gutstein, Esq.*
*kgutstein@kdvlaw.com*

Telephone: 516.681.1100
Facsimile: 516.681.1101

www.kdvlaw.com

February 6, 2018

**VIA ECF**
Hon. Vincent L. Briccetti
United States District Court
Southern District of New York
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

      Re:    *Kobeck v. Armonk Bristal LLC, et al.*
               **Case No. 7:16-cv-08770 (VB)**

Dear Judge Briccetti:

      This office represents the Defendants in the above referenced matter. We write in response to Plaintiffs' counsel's letter dated January 16, 2018, which seeks to completely disregard a Stipulation of Conditional Collective Certification that was entered into by the parties and So Ordered by Your Honor almost 10 months ago. For the reasons set forth herein, Plaintiffs' request for a pre-motion conference, or, in the alternative, for the relief requested should be denied.

      In their letter to the Court, Plaintiffs curiously seek: (a) to extend the scope of the collective action to include all non-exempt sales employees who entered into arbitration agreements; (b) permission from the Court to obtain the contact information of such employees; and (c) to distribute notice of the collective action to such employees. While Plaintiffs may be frustrated by the small number of opt-ins during the Court-Ordered opt-in period, such frustration does not excuse their baseless attempt to ignore all prior good faith negotiations and the agreement reached between the parties, as well as this Court's Order of Conditional Collective Certification, each of which occurred almost 10 months ago.

      On March 30, 2017, an initial conference was held in which Your Honor urged the parties to stipulate to a collective to spare the time and expense of motion practice related to the initial step of conditional Certification. As such, on March 30, 2017, Your Honor Ordered that the deadline for the parties to stipulate to a collective action was May 1, 2017. Subsequently, over the next month, the parties engaged in negotiations to determine the scope of a potential collective and the content of a notice to be sent to potential collective members. These negotiations resulted in the parties agreeing to a Stipulation of Conditional Collective Certification that was filed with the Court and was So Ordered by Your Honor on April 27, 2017. As a result, conditional collective Certification in this matter was consented to "for all non-exempt sales employees (including but not limited to the positions "Director of Community Relations", "Community Relations Coordinator," and "Sales Executive") employed by

Defendants at any time between November 11, 2013 and the present who timely "opted out" of the Defendants Dispute Resolution Agreement." *See* Exhibit A.[1]

Now, almost 10 months later, Plaintiffs seek to set aside the Court's Order and seek to expand the Collective to a group of employees who were clearly not entitled to be a part of the Collective in the first place. As set forth by the Court in *Morangelli v. Chemed Corp.*, 2010 U.S. Dist. LEXIS 146149, 13 (E.D.N.Y. 2010), "[i]t would be a disservice to judicial efficiency to certify all [requested putative collective class members], when those with arbitration agreements are subject to additional, prolonging motion practice which will likely disqualify them from the class." In fact, the Court in *Morangelli* confirmed that "[o]pt-in plaintiffs who cannot bring suit in federal court are simply not similarly situated with those who can." *Id.* at 13-14.

As Your Honor will recall, the Dispute Resolution Agreement at issue here unambiguously states:

> **"Can I still choose to go to court?** No. If I do not opt-out of the arbitration provisions of the DRP, I waive my right to have my case submitted to a court of law and decided by a judge or jury. I understand that if I choose to submit to an arbitrator, he or she will have the same authority and may issue the same type of decision as a judge or jury would if they were deciding the case."

> **"Can I be part of a class action?** No. If I do not opt out, I waive my right to submit my claim as part of class or collective action, or part of a class arbitration." *See* Exhibit B.[2]

Thus, any putative Collective class member who was not a part of the initial Collective So Ordered by Your Honor is simply ineligible to become an opt-in plaintiff in this action because all such additional putative collective members would have signed the Dispute Resolution Agreement. In fact, Plaintiffs' counsel already confirmed this to be true during a pre-motion conference that was held in this matter on September 28, 2017. During this pre-motion conference, Your Honor stated that the Court understood "that the Supreme Court has given the back of its hand to just about every effort made over the last eight or ten years to swat away these [arbitration] agreements, which do surrender some very substantial rights that people otherwise would have. So if she signed it, she signed it. I think you're stuck with that. Aren't you?" In response, Plaintiffs' counsel agreed, replying "Yes, your Honor" and subsequently withdrew the opt-in plaintiff at issue (Barbara Mattesich) from the action because she had signed the Dispute Resolution Agreement. *See* Exhibit C,[3] pg. 18. It is apparent that Plaintiffs' counsel, by submitting its letter to the Court, is hoping that the Court also disregard the fact that this issue

---

[1] Attached hereto as Exhibit A is a true and accurate copy of the Stipulation of Conditional Collective Certification that was So Ordered by Your Honor on April 27, 2017.
[2] Attached hereto as Exhibit B is a true and accurate copy of the Dispute Resolution Agreement signed by Barbara Mattesich, an Opt-In Plaintiff who previously withdrew her claims in this action as a result of the binding Dispute Resolution Agreement.
[3] Attached hereto as Exhibit C is a true and accurate copy of pages from the transcript from a pre-motion conference that took place on September 28, 2017.

Hon. Vincent L. Briccetti
February 6, 2018
Page 3 of 4

has already been addressed by Your Honor. Plaintiffs' only achievement by having notices sent out to those who signed the Dispute Resolution Agreement is the creation of unnecessary motion practice for the Court, which will in turn increase Plaintiffs' counsel's attorneys' fees. This should not be permitted.

Moreover, Plaintiffs' allegation that discovery efforts have not proceeded beyond the stage where expansion of the collective action would be prejudicial or impractical is blatantly false. After the expiration of the agreed-upon notice period, during which 3 plaintiffs opted into the action, the parties engaged in substantial discovery. For example, Defendants have already produced over 1,700 pages of documents during discovery of this action, including documents concerning opt-in Plaintiffs. Such production was a result of detailed and thorough discussions about ESI. Thus, Plaintiffs' allegation that discovery is moving at a "glacial" pace is self-serving, and clearly misleading.

In addition, though Plaintiffs argue that the case is only in the pleading stage, the Court is reminded that the only reason that a motion to dismiss is currently pending is because one of the opt-in Plaintiffs elected to include in her amended complaint allegations of unrelated State-law claims, thus raising issues of supplemental jurisdiction. Undisputedly, an expansion of the scope of conditional Certification would unnecessarily delay this matter. In fact, it is entirely possible that if the scope of conditional Certification is extended, it would take another 10 months until the parties are able to return to the current stage in discovery.

Strikingly, Plaintiffs were unable to cite to a single statute or case from this Circuit that permits the Plaintiffs to expand the scope of a FLSA Collective after a Stipulation of Conditional Collective Certification had been agreed to by the parties. While Plaintiffs desperately cite to a case from the Northern District of California in support of this principal, such a case is not binding and presents an entirely different set of facts to the present action. In *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 955 (2017 N.D.C.A.), unlike in the present matter, the plaintiff filed a motion for conditional Certification notice prior to a Stipulation for conditional Certification being Ordered by the Court. When a stipulation for conditional Certification notice was reached in *Conde*, the Court held plaintiff's motion regarding conditional Certification notice in abeyance and stayed the case, thus, unlike here, it was known by all parties at the time that the stipulation concerning conditional collective Certification could be expanded at some point in the future. *Id*. Here, by comparison, the Stipulation of Conditional Collective Certification was agreed to in order to avoid motion practice. Defendants would never have entered such a Stipulation if almost 10 months later Plaintiffs could simply change their mind and pursue a motion for conditional Certification. The bad faith shown by Plaintiffs in this maneuver is unacceptable and cannot be rewarded.

Moreover, it is important to note that the Court in *Conde* specifically differentiated the Northern District of California from other districts around the country in its treatment of putative collective members who have signed an arbitration agreement. In fact, the Court specifically cited the *Morangelli* case discussed above, as an example of a New York District Court excluding putative collective members who signed an arbitration agreement. *Id*. at 968. Furthermore, because such persons who signed an arbitration agreement cannot opt-in to the

collective action, there is no reason to unduly burden the Defendants by requiring them to provide notice of this action to such ineligible sales employees.

Lastly, Plaintiffs attempt to confuse the Court by alleging that expansion of the collective Certification is now appropriate because Defendants stipulated to a joint employer relationship and because of discovery obtained thus far. Plaintiffs, however, conveniently fail to cite to any statute or case law in support of this principle. Specifically, Plaintiffs rely on no legal authority whatsoever to support that such discovery would permit Plaintiffs to have another bite at the conditional Certification apple after an agreed-upon Stipulation consenting to conditional Certification has been So Ordered by the Court. Defendants continue to deny the allegations set forth in Plaintiffs' Second Amended Class and Collective Action Complaint. In addition, as evidenced by Plaintiff Kobeck's retaliation claim, Plaintiffs have had knowledge of the Dispute Resolution Agreement at issue since the beginning of the action. Though futile in light of applicable legal authority, if they wished to seek conditional collective Certification that included employees who signed the Dispute Resolution Agreement, the time to do so was approximately 10 months ago prior to agreeing to the Stipulation of Conditional Collective Certification.

Consequently, Plaintiffs' request for a pre-motion conference, and/or the relief requested in their letter should be denied in its entirety.

Respectfully submitted,

Kaufman Dolowich & Voluck, LLP

Keith Gutstein

cc: All counsel of record via ECF

4818-9114-0188, v. 1

EXHIBIT A

RECEIVED APR 26 2017 CHAMBERS OF VINCENT L. BRICCETTI UNITED STATES DISTRICT JUDGE SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-28-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

JOHN KOBECK,
on behalf of himself, FLSA Collective
Plaintiffs and the Class,

                       Plaintiff,

-against-

ARMONK BRISTAL LLC, et al.

                       Defendants.

-----------------------------------------------------------X

Case No. 16 CV 8770 (VB)

<u>STIPULATION OF CONDITIONAL
COLLECTIVE CERTIFICATION</u>

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff JOHN KOBECK ("Plaintiff") and Defendants (as defined below, and collectively with Plaintiff, the "Parties"), acting by means of their respective counsel, that:

(1) Defendants ARMONK BRISTAL LLC, ARMONK SENIOR CARE LLC, WOODCLIFF LAKE SENIOR CARE, LLC, WOODCLIFF LAKE BRISTAL LLC, SAYVILLE BRISTAL LLC, WESTBURY SENIOR LIVING INC., LYNBROOK SENIOR CARE, LLC, EB AT HOLTSVILLE, LLC, LAKE GROVE SENIOR CARE LLC, EB CARE AT LAKE SUCCESS LLC, EB CARE AT WEST BABYLON LLC, ENGEL BURMAN AT JERICHO, LLC, ENGEL BURMAN AT ENGLEWOOD LLC, ENGEL BURMAN AT WAYNE LLC, ULTIMATE CARE ASSISTED LIVING MANAGEMENT LLC, JAN BURMAN, STEVEN KRIEGER, MARYELLEN MCKEON, LAURIE MUSTO, LORI MALONEY, and SAMANTHA KRIEGER (collectively, "Defendants") consent to conditional collective certification for all non-exempt sales employees (including but not limited to the positions "Director of Community Relations", "Community Relations Coordinator," and "Sales Executive") employed by Defendants at any time between November 11, 2013 and the present.

who timely "opted out" of the Defendants Dispute Resolution Agreement ("Covered Employees").

(2)   Defendants will provide, with respect to Covered Employees, in Microsoft Excel format, the names, titles, compensation rates, mailing addresses, and dates of employment, as well as an affidavit from an employee of Defendants confirming the identities of all Covered Employees, within 10 days of Court approval of this stipulation;

(3)   Plaintiff's counsel will mail the collective certification notice (attached hereto) to Covered Employees within 10 days of receiving class information from Defendants;

(4)   Covered Employees shall have 30 days from the date Plaintiff's counsel mails the collective certification notice to file their Consent to Join Form; and

(5)   In the event that any of the collective certification notices sent to Covered Employees are returned to Plaintiffs' counsel as "undeliverable", Plaintiff's counsel shall notify Defendants' counsel in writing, who will then provide Plaintiff's counsel with Social Security numbers (if known) of Covered Employees whose notices were returned as undeliverable.

*For Defendants:*

By: _____
Keith I. Gutstein, Esq.
David A Tauster, Esq.
Kaufman Dolowich & Voluck, LLP
135 Crossways Park Dr., Suite 201
Woodbury, NY 11797
Telephone: (516) 283-8708

Date: 4/25/17

SO ORDERED, White Plains
Dated: ~~New York~~, New York

April 27, 2017
_____

4815-2808-5831, v. 1

*For Plaintiff, FLSA Collective Plaintiffs, and the Class:*

By: _____
C. K. Lee, Esq.
Lee Litigation Group, PLLC
30 East 59th Street, 2nd Floor
New York, New York 10016
Phone: (212) 465-1180

Date: 4.25.17

_____
The Honorable Vincent L. Briccetti, U.S.D.J.

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------

JOHN KOBECK,
*on behalf of himself, FLSA Collective Plaintiffs
and the Class*,

              Plaintiff,

        -against-

ARMONK BRISTAL LLC, et al,

            Defendants.

------------------------------

Case No. 16 CV 8870

**NOTICE OF PENDENCY OF
LAWSUIT REGARDING WAGES**

Please read this notice if you are or were employed as a non-exempt sales employee (including but not limited to the positions "Director of Community Relations", "Community Relations Coordinator," and "Sales Executive") at any time between November 11, 2013 and the present at any one of the Bristal Assisted Living Facilities (the "Bristal") and timely opted out of the Bristal's Dispute Resolution Agreement.

    JOHN KOBECK ("Plaintiff"), has sued ARMONK BRISTAL LLC, ARMONK SENIOR CARE LLC, WOODCLIFF LAKE SENIOR CARE, LLC, WOODCLIFF LAKE BRISTAL LLC, SAYVILLE BRISTAL LLC, WESTBURY SENIOR LIVING INC., LYNBROOK SENIOR CARE, LLC, EB AT HOLTSVILLE, LLC, LAKE GROVE SENIOR CARE LLC, EB CARE AT LAKE SUCCESS LLC, EB CARE AT WEST BABYLON LLC, ENGEL BURMAN AT JERICHO, LLC, ENGEL BURMAN AT ENGLEWOOD LLC, ENGEL BURMAN AT WAYNE LLC, ULTIMATE CARE ASSISTED LIVING MANAGEMENT LLC, JAN BURMAN, STEVEN KRIEGER, MARYELLEN MCKEON, LAURIE MUSTO, LORI MALONEY, and SAMANTHA KRIEGER ("Defendants"). His lawsuit's federal collective Fair Labor Standards Act ("FLSA") claims seek back wages for unpaid overtime compensation, liquidated damages, and attorneys' fees and costs, and damages for retaliation.[1]

    Defendants deny that the Plaintiff's claims have merit and maintain that all of their employees were and continue to be paid in accordance with federal and state law. The purpose of this Notice is to advise you of the existence of Plaintiff's FLSA claim and of certain rights you may have with respect to the FLSA claim. The Court has not decided the merits of any claims or any defenses asserted by any party to this lawsuit or whether any party is right or wrong.

## YOUR LEGAL RIGHTS

    If you worked for Defendants as a non-exempt sales employee (including but not limited to the positions "Director of Community Relations", "Community Relations Coordinator," and "Sales Executive") at any time between November 11, 2013 and the present, and timely opted out of the Bristal's Dispute Resolution Agreement, you may join this lawsuit. If you believe that you may be able to assert any of the claims described above, you have the right to participate in this lawsuit. It is your right to join or not to join this lawsuit. Defendants will not retaliate, discharge, take any adverse action, or discriminate against you in any way for participating in this lawsuit.

---

[1] The lawsuit also includes a class action claim under the New York Labor Law ("NYLL"). This Notice applies only to the FLSA claim, not to the class action claim brought under the NYLL.

If you participate in this lawsuit's FLSA claim, you will be required to provide information and answer questions, and you may be required to testify at a deposition and in court and to produce documents. If you participate in this lawsuit, you must preserve all documents in your possession, custody, or control relating to your employment with the Bristal. You will also be bound by the outcome of this lawsuit's FLSA claim, whether it is favorable or unfavorable.

To join this lawsuit, you must sign a "Consent to Join" form, which is enclosed with this Notice, and send it on or before [30 days from the date notice is sent out] to:

> C. K. Lee, Esq.
> Lee Litigation Group, PLLC
> 30 East 39th Street, Second Floor
> New York, NY 10016

If you do not join this lawsuit, you will not be affected by any settlement or judgment rendered in this case, whether favorable or unfavorable, and the limitations period on any FLSA claim which you may or may not have against Defendants will continue to run.

## THE LAWYERS REPRESENTING PLAINTIFFS

The plaintiff in this lawsuit is represented by Lee Litigation Group, PLLC. The firm is handling the lawsuit on a "contingency fee" basis, which means that you do not have to pay any attorneys' fees or expenses for this lawsuit. If the plaintiff wins a favorable judgment, Lee Litigation Group, PLLC may ask the Court to award them (i) reasonable attorney's fees calculated using the lodestar method (i.e. number of hours expended multiplied by a reasonable court approved rate), or (ii) up to one-third of the monetary recovery, whichever is greater. You are not required to have Lee Litigation Group, PLLC represent you. If you want your own attorney to represent you in this lawsuit, however, you may be responsible for paying that attorney's fees and expenses.

## GETTING MORE INFORMATION

You can obtain more information about this lawsuit by contacting C. K. Lee, Esq.:

> C. K. Lee, Esq.
> Lee Litigation Group, PLLC
> 30 East 39th Street, Second Floor
> New York, NY 10016
> Tel: (212) 465-1180
> Fax: (212) 465-1181
> Email: cklee@leelitigation.com

**Do not call or write the Court or the Clerk's Office with questions.**

Dated: New York, New York, _____, 2017

## "CONSENT TO JOIN" FORM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------

JOHN KOBECK,
on behalf of himself, FLSA Collective Plaintiffs
and the Class,

           Plaintiff,

    -against-

           Case No. 16 CV 8770

ARMONK BRISTAL LLC, et al.,

           Defendants.

------------------------------

If you are or were employed at any one of THE BRISTAL ASSISTED LIVING FACILITES as a non-exempt sales employee (including but not limited to the positions "Director of Community Relations", "Community Relations Coordinator," and "Sales Executive") at any time between November 11, 2013 and the present, and timely opted out of the Bristal's Dispute Resolution Agreement, please complete and mail this Consent Form by [30 days from the date of notice] to:

    C. K. Lee, Esq.
    Lee Litigation Group, PLLC
    30 East 39th Street, Second Floor
    New York, NY 10016

I hereby consent to join this lawsuit as a party plaintiff. By signing and returning this consent form, I hereby designate John Kobeck, or his counsel Lee Litigation Group, PLLC, to represent me and make decisions on my behalf concerning the litigation and any settlement.

Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Telephone Number: _____ Social Security No.: _____

E-mail Address: _____

SIGNATURE: _____ Date: _____

4837-9379-6423, v. 1

# EXHIBIT B

## PROBLEM SOLVING
# DISPUTE RESOLUTION AGREEMENT

This is an agreement between _Barbara Reynolds-Mattesich_ and The Bristal at _Woodcliff Lake_.
Both parties agree today, _11/11_ 20_14_ to abide by the following dispute resolution procedure for any covered claims that either of us have against the other arising from my employment.

In any job, problems and complaints may arise. Here at The Bristal we believe that most problems and complaints can be settled when a team member promptly and appropriately discusses the facts with his/her team leader. However, The Bristal and I recognize the need for a system that will ensure that more substantial disagreements are fully heard and fairly decided.

Therefore, The Bristal offers a procedure to assure that problems and complaints are resolved in a transparent and consistent manner - this is called the Dispute Resolution Process (DRP). By agreement between me and The Bristal, any one of the four steps of the DRP may be waived, or taken out of order. The Bristal's DRP works as follows:

### The First Step: My Supervisor
I will have an open discussion with my Supervisor about my concern. My Supervisor will obtain all the facts, consider the matter, and attempt to satisfactorily settle/respond to my complaint as quickly as possible.

### The Second Step: My Executive Director
If a solution cannot be obtained with my Supervisor, I may escalate the situation to the Executive Director (ED) of my community within 7 days of the outcome in Step 1. I shall submit the concern in writing at this second step. The ED will serve to assist me in completing a detailed factual review of the situation including all events leading up to my concern.

**Can I still choose to go to court?** No. If I do not opt-out of the arbitration provisions of the DRP, I waive my right to have my case submitted to a court of law and decided by a judge or jury. I understand that if I choose to submit to an arbitrator, he or she will have the same authority and may issue the same type of decision as a judge or jury would if they were deciding the case. I understand that, just as in a court of law, I will be responsible for my own legal costs and expenses, unless the arbitrator orders otherwise.

**Can I be part of a class action?** No. If I do not opt out, I waive my right to submit my claim as part of class or collective action, or part of a class arbitration. However, this waiver shall not affect or diminish the substantive remedies that I may be awarded by an arbitrator.

After reviewing this information, and receiving answers to my questions, I voluntarily agree to The Bristal's Dispute Resolution Policy.

BARBHRA REYNOLDS-MATTESICH     _[signature]_ 11/10/14
Print Name of Team Member        Team Member's Signature/Date

_[signature]_                    _[signature]_ 11/1/14
Print Name of Witness            Witness's Signature/Date

62  *Tear Out for Signature and File*

EXHIBIT C

20179skobec

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOHN KOBECK, on behalf of
himself, FLSA Collective
Plaintiffs and Class Members,

                Plaintiffs,

          v.                              16 Civ. 8770(VB)

                                          CONFERENCE

ARMONK BRISTAL, LLC, et al.,

                Defendants.
------------------------------------x

                                          United States Courthouse
                                          White Plains, N.Y.
                                          September 28, 2017


Before:   THE HONORABLE VINCENT L. BRICCETTI,

                                          District Judge


                       APPEARANCES

LEE LITIGATION GROUP
     Attorneys for Plaintiffs
TAIMUR ALAMGIR


KAUFMAN, DOLOWICH & VOLUCK, LLP
     Attorneys for Defendants
MATTHEW COHEN
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914) 390-4103

1  what you're doing, for 31 years, and that's one of the lessons
2  I learned.  So your client says I didn't sign the arbitration
3  agreement.  Arbitration agreement?  No, I didn't do that.
4  Nope.  Not me.
5              And you have it right in front of you with her
6  signature on it?
7              MR. COHEN:  Yes.
8              THE COURT:  Have you produced it to him?
9              MR. COHEN:  It was never asked until I just saw the
10 letter yesterday.  I have it right here.  I can give him a copy
11 right now.
12             THE COURT:  Hold on one second.
13             Oh, yes.  The plaintiff said in their letter, or one
14 of their letters, that no arbitration has been produced.
15             Well, he's going to give it to you right now.
16             Doesn't that mean -- I mean, I understand that
17 arbitration agreements, especially in this context -- the whole
18 idea of arbitration in this context is a very controversial
19 subject, something that's been pushed heavily by big business,
20 big consumer companies like cell phone companies, but also
21 employers who essentially say to new employees, well, look, we
22 would love to have you on board; can't wait for you to start;
23 oh, by the way, you need to review this thing here.  It's
24 called an arbitration agreement.  And if you don't want to
25 participate in that, then you can't be employed by me or,

1 alternatively, you can be employed by me, but you have to
2 affirmatively opt out of this arbitration agreement. And I
3 understand the controversy surrounding that. I also understand
4 that the Supreme Court has given the back of its hand to just
5 about every effort made over the last eight or ten years to
6 swat away these agreements, which do surrender some very
7 substantial rights that people otherwise would have.
8     So if she signed it, she signed it. I think you're
9 stuck with that. Aren't you?
10     MR. ALAMGIR: Yes, your Honor.
11     THE COURT: So when you file your amended complaint,
12 you better read that document before you do that, because the
13 last thing you want to do is make an allegation which you know
14 or have reason to believe is false. Right?
15     MR. ALAMGIR: Yes, your Honor. I'll have to go -- I
16 mean, I'll have to go back to my client and tell her about this
17 document.
18     THE COURT: Show her the document. Is this your
19 signature? That kind of thing.
20     She may have forgotten. I'm not really even angry
21 about it. It's just that clients don't -- time marches on.
22 Life is complicated. You have to feed your family. You've got
23 a lot of things going on in your life. She may look at this
24 document and say, gee, I never remember seeing that.
25     Can I see it, by the way, just for the heck of it?

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914) 390-4103